COMMONWEALTH *VS.* KENNETH A. VAIDULAS.

Franklin. November 6, 2000. - January 24, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Criminal,* Motion in limine, Postconviction relief, Interlocutory appeal, Appeal. *Public Officer. Police Officer. Municipal Corporations,* Police.

The Commonwealth properly appealed, pursuant to Mass. R. Crim. P. 30 (c) (8) and G. L. c. 278, § 28E, a District Court judge's postverdict allowance of a criminal defendant's motion in limine that effectively dismissed the complaint. [249-252]

A criminal defendant had no standing in a criminal proceeding collaterally to challenge the authority of the arresting police officer, based on the officer's failure to have met the training requirements of G. L. c. 41, § 96B; the appropriate remedy for an individual harmed by inappropriate, inadequate, or negligent training of police officers is an action against the municipality or supervising authority under the Massachusetts Tort Claims Act or pursuant to 42 U.S.C. § 1983. [252-254]

COMPLAINT received and sworn to in the Orange Division of the District Court Department on August 25, 1997.

The case was tried before *W. Michael Ryan,* J., and a motion in limine was heard posttrial by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Steven W. Panagiotes* for the defendant.

SPINA, J. The Commonwealth appealed from the postconviction order of a judge in the District Court for a required finding of not guilty. The order was entered after the judge determined posttrial a motion in limine that he had taken under advisement before trial. Pursuant to the motion in limine, the judge struck the testimony of a police officer who had arrested the defendant before the officer completed the training requirements set forth in G. L. c. 41, § 96B. On appeal, the Commonwealth argues

that (1) the officer was exempt from the requirements of the statute at the time of the defendant's arrest, (2) the defendant lacks standing to challenge the officer's authority, and (3) if the defendant has standing, the de facto officer doctrine applies. We vacate the judge's order and reinstate the jury's verdict because the officer's authority may not be attacked collaterally in a criminal proceeding.

On August 24, 1997, Officer Michael Willhite of the Athol police department was on routine patrol, in uniform, and driving a marked police cruiser. He stopped the defendant's vehicle for failure to dim the headlights, a civil motor vehicle infraction. 540 Code Mass. Regs. § 2.12 (1993). During the stop the officer smelled alcohol on the defendant's breath, and noticed his bloodshot eyes and slurred speech. The officer asked the defendant to perform field sobriety tests. At the conclusion of these tests, the officer arrested the defendant for operating a motor vehicle while under the influence of alcohol, a violation of G. L. c. 90, § 24.

At the time of the arrest, the officer had not completed the training required by G. L. c. 41, § 96B.[1] Earlier, on December 9, 1996, the chief of police of Athol, the officer's appointing authority, had made a request pursuant to 550 Code Mass. Regs. § 3.02(8)(a) (1993) that the officer be exempted from the requirement of § 96B. He obtained a ninety-day exemption, the maximum allowed at that time.[2]

On September 15, 1998, eight days before trial, defense counsel moved in limine to exclude the officer's testimony on

[1]General Laws c. 41, § 96B, provides in relevant part: "Every person who receives an appointment to a position on a full-time basis in which he will exercise police powers in the police department of any city or town, shall, prior to exercising police powers, be assigned to and satisfactorily complete a prescribed course of study approved by the department of criminal justice training. . . .

"Failure of an appointed person to comply with the provisions of this section prior to his exercising police powers, shall result in the appointed person's removal by the appointing authority, provided said person has not been exempted therefrom by said department as herein provided. Failure of an appointed person to satisfactorily complete the prescribed course of study may result in his removal by the appointing authority."

[2]Effective January 1, 1997, 550 Code Mass. Regs. § 22 was amended to provide a maximum exemption period of 270 days, but it is undisputed that the chief of police never requested an additional exemption, and that on the date of the arrest, the officer was working as a full-time police officer beyond the expiration of his ninety-day exemption period.

the ground that the officer was without authority to arrest the defendant because he failed to meet the requirements of G. L. c. 41, § 96B. The trial judge took the motion under advisement, then proceeded with the trial and permitted the officer to testify. Defense counsel did not object to the officer's taking the witness stand.

The jury of six returned a guilty verdict on September 24. After the judge dismissed the jury, defense counsel reminded the judge of the motion in limine and requested that the judge address the motion and set aside the verdict. The judge, noting that he had agreed earlier to resolve the issue before imposing any disposition, stated that, "based on the motion, and . . . the way the officer testified, I think that [defense counsel] certainly raised a prima facie case that there was no authority to arrest [the defendant]."

On January 8, 1999, after a hearing, the judge allowed the defendant's motion in limine, struck the arresting officer's testimony, and ordered that a required finding of not guilty be entered. On January 13, 1999, the Commonwealth filed a notice of appeal "pursuant to Mass. R. Crim. P. 15 (a) (2)," as appearing in 422 Mass. 1501 (1996). On January 19, 1999, the Commonwealth filed in the county court an application for leave to file an interlocutory appeal. A single justice of this court denied that application. There is no appeal from that decision. See *Cowell* v. *Commonwealth*, 432 Mass. 1028 (2000). We transferred the Commonwealth's appeal to this court on our own motion.

1. *Procedural issues.* The defendant argues that the only avenue of relief available to the Commonwealth is under G. L. c. 211, § 3. Such relief is only available where all other avenues of relief are foreclosed. See *Costarelli* v. *Municipal Court of the City of Boston*, 367 Mass. 35, 41 (1975), quoting G. L. c. 211, § 3 ("the statutory power of 'general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided' should be used sparingly, and should rarely be used in a case where some other practical remedy is available").

We must first review the nature of the trial judge's postconviction order, as it necessarily determines the procedural posture of the Commonwealth's appeal. The purpose of a motion in limine is "to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence." *Commonwealth* v. *Lo-*

*pez,* 383 Mass. 497, 500 n.2 (1981). While these motions are typically filed prior to trial, we have previously held that they may be filed and heard during the course of a trial as unforeseen exigencies often arise. See *Commonwealth* v. *Pina,* 406 Mass. 540, 550, cert. denied, 498 U.S. 832 (1990). Regardless of when filed, we have frequently expressed our preference for early rulings on motions in limine. See *Commonwealth* v. *Diaz,* 383 Mass. 73, 81 (1981). This case, however, presents the unusual scenario where the motion was filed timely, the challenged witness testified, and the judge then granted the motion after the jury had returned a guilty verdict.

The judge acknowledged that the motion in limine was filed before trial, but despite the fact that the witness testified, the judge stated that the motion was not decided as of the time the jury returned their verdict. He determined that it could be treated as either a "renewed" pretrial motion and therefore properly before the court pursuant to Mass. R. Crim P. 13 (a) (5), 378 Mass. 871 (1979), or a postconviction motion and therefore subject to Mass. R. Crim. P. 30 (a), (b), 378 Mass. 900 (1979). We disagree. The only proper basis on which the judge could have granted the requested relief posttrial was through application of rule 30 (b).

Rule 13 (a) (5) states that, "[u]pon a showing that substantial justice so requires, the judge or special magistrate may permit a pretrial motion which has been heard and denied to be renewed." Because the challenged witness testified, the motion in limine was, in substance, denied. It could not be renewed after trial because there is no mechanism to seek reconsideration after trial of a decision under rule 13 (a) (5). The only means of revisiting after trial a matter raised in a motion in limine is through a motion for postconviction relief under rule 30, or on appeal.

Rule 30 (a) cannot support the judge's action because, by its express language, it is limited to providing relief for "confinement or restraint . . . imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts." It is undisputed that the defendant was never sentenced. Absent a sentence that is somehow defective, rule 30 (a) has no application. See *Commonwealth* v. *Christian,* 429 Mass. 1022, 1023 (1999) (rule 30 [a] "was not intended to provide an avenue for plenary appellate review. Instead, it was designed to enable defendants to challenge the legality or the technical basis of a sentence").

Rule 30 (b) provides authority for a judge, on motion, to grant a "new trial at any time if it appears that justice may not have been done." The judge's treatment of the defendant's motion most closely approximated that of a motion filed under rule 30 (b). In effect, the judge determined that justice had not been done because the officer should not have been allowed to testify. He implicitly granted the defendant a new trial on that basis, then dismissed the charge because the Commonwealth could not meet its burden of proof without the officer's testimony. The Commonwealth has a right of appeal, pursuant to Mass. R. Crim. P. 30 (c) (8), as appearing in 420 Mass. 1502 (1995), from an order granting postconviction relief under rule 30 (b). See *Latimore* v. *Commonwealth*, 417 Mass. 805, 808 (1994) ("Rule 30 is the source of the Commonwealth's right to appeal from rulings on postconviction motions, a right the Commonwealth did not enjoy prior to the rule's adoption in 1979"). Additionally, we have construed a motion under rule 30 (b) as a "motion for appropriate relief under the Massachusetts Rules of Criminal Procedure" and therefore the Commonwealth has a right to appeal pursuant to G. L. c. 278, § 28E. See *Commonwealth* v. *Amirault*, 415 Mass. 112, 114 (1993). Because the Commonwealth has an available means of appeal, review pursuant to G. L. c. 211, § 3, is not available.[3]

The single justice correctly denied the Commonwealth's application for leave to take an interlocutory appeal pursuant to Mass. R. Crim. P. 15 (c), as appearing in 422 Mass. 1501 (1996). That rule provides that "[a]ny motion the determination of which may be appealed pursuant to this rule shall be decided by the judge before the defendant is placed in jeopardy under established rules of law." See Reporters' Notes to Mass. R. Crim. P. 15, Mass. Ann. Laws, Rules of Criminal Procedure, at 182 (Lexis 1997) ("In order to preserve the Commonwealth's right to appeal, the rule requires that the judge's ruling on the

---

[3]The judge ordered entry of a required finding of not guilty. Although the order draws on the language of Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), relief under that rule can only be granted where the defendant has renewed a motion for a required finding made during the trial. The defendant did move for a required finding of not guilty at the close of the Commonwealth's case, but the motion was not renewed at the close of all the evidence. Had we viewed the motion as a renewed motion for a required finding of not guilty, and treated the judge's order as made under rule 25 (b) (2), that order would have been appealable pursuant to Mass. R. Crim. P. 25 (c) (1), as appearing in 389 Mass. 1107 (1983).

motion be made before the defendant is placed in jeopardy"). Here, the judge did not decide the motion until after the jury had returned its guilty verdict. Because jeopardy attached when the jury was sworn, *Commonwealth* v. *Super*, 431 Mass. 492, 496 (2000), rule 15 (c) provided no basis to challenge the judge's order.

The defendant contends that the Commonwealth did not file a proper notice of appeal because it was captioned under rule 15 (a) (2). The defendant's argument elevates form over substance. It is clear that the Commonwealth, uncertain how to proceed based on the unusual timing and inappropriate nomenclature of the judge's order, filed its notice of appeal pursuant to rule 15 (a) (2) out of an abundance of caution. In its application for an interlocutory appeal, the Commonwealth asserted that the appeal should be considered pursuant to rule 30, but explained that it was submitting its application for an interlocutory appeal on the basis of the original posture of the defendant's motion (i.e., a motion in limine to exclude evidence). The Commonwealth's notice of appeal was filed timely, and the defendant has not shown any prejudice from the reference to rule 15 (a) (2).

The Commonwealth's appeal is properly before us under Mass. R. Crim. P. 30 (c) (8), and G. L. c. 278, § 28E. Resort to our superintendence powers under G. L. c. 211, § 3, is not necessary.

2. *Collateral attack.* The Commonwealth argues that the defendant lacks standing to challenge the authority of an officer who had not met the training requirement of § 96B. It is clear that the import of the defendant's motion in limine was an attack on the officer's title to office. That issue may not be raised in the defendant's criminal proceeding, for reasons that we shall explain. The issue of standing to challenge the officer's title to office, then, has no relevance.

Officer Willhite had been appointed to the position of full time police officer in the town of Athol and was acting at least with de facto authority.[4] A de facto officer is "one whose title is not good in law, but who is in fact in the unobstructed possession of an office and discharging its duties in full view of the

---

[4]The Attorney General, in response to an inquiry from the Massachusetts Criminal Justice Training Council, has opined that an officer who has not yet completed his training should nevertheless be afforded "permanent" employee status. See Rep. A.G., Pub. Doc. No. 12, at 526 (1978).

public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper" (citation omitted). *United States* v. *Royer*, 268 U.S. 394, 397 (1925). We have recognized the exercise of de facto authority by a variety of governmental officials. See, e.g., *Barnes* v. *Peck*, 283 Mass. 618 (1933) (water commissioner); *Welsh* v. *Briggs*, 204 Mass 540, 549 (1910) (tax assessor); *Clark* v. *Easton*, 146 Mass. 43 (1888) (railroad commissioner); *Sheehan's Case*, 122 Mass. 145, 146 (1877) (judge); *Petersilea* v. *Stone*, 119 Mass. 465 (1876) (constable); *Fowler* v. *Bebee*, 9 Mass. 231 (1812) (sheriff). "So far as the validity of their action is concerned there is no difference between an officer de facto and an officer de jure." *Welsh* v. *Briggs, supra.* See *Commonwealth* v. *Wotton*, 201 Mass. 81, 84 (1909).

A public officer's right and title to office may not be attacked collaterally, but only in a direct action instituted to determine the validity of his claim to office. See *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 75 (1977); *Commonwealth* v. *DiStasio*, 297 Mass. 347, 351, cert. denied, 302 U.S. 683 and 302 U.S. 759 (1937). There are two reasons for this rule. The first is "to ensure that public officials have a full opportunity to defend against a challenge in a proceeding where the merits of a particular public matter are not also at issue." *Boston Edison Co.* v. *Boston Redevelopment Auth., supra* at 75. The second is to protect the public's reliance on an officer's authority and to ensure the orderly administration of government. *Id.* See *Sheehan's Case, supra.*[5] An officer who fails to complete the requisite training satisfactorily is subject to "removal by the appointing authority." G. L. c. 41, § 96B. The Attorney General also may seek removal pursuant to G. L. c. 249, § 9. See *Commonwealth* v. *Allen*, 128 Mass. 308 (1880) (chief of police removed); *Commonwealth* v. *Hawkes*, 123 Mass. 525 (1878) (removal of judge mentioned in *Sheehan's Case, supra*). There is no authority for a defendant to institute such a proceeding.

There are circumstances where a defendant properly may challenge the authority of a police officer to act. One such

---

[5]Other States that have applied the de facto officer doctrine to police officers have done so for similar reasons. See *State* v. *Whelan*, 103 Idaho 651 (1982); *State* v. *Driscoll*, 455 N.W.2d 916 (Iowa 1990); *Bogard* v. *Commonwealth*, 687 S.W.2d 533 (Ky. Ct. App. 1984), cert. denied, 474 U.S. 843 (1985); *State* v. *Oren*, 160 Vt. 245, 247 (1993).

instance is the authority of an officer to make a warrantless arrest outside his jurisdiction absent fresh and continued pursuit for a crime committed in the officer's presence. See *Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986). Here, the defendant does not challenge the range of the officer's authority to arrest, but the officer's authority to arrest in any circumstances because he was not properly a police officer. Such an attack may not be made secondarily in a criminal proceeding. See *Brierly* v. *Walsh*, 299 Mass. 292, 294-295 (1938); *Commonwealth* v. *DiStasio, supra.* We hold that the defendant may not collaterally attack in his criminal prosecution the authority of his arresting officer on the basis of that officer's failure to complete the training requirements of G. L. c. 41, § 96B.

Our holding does not leave a defendant without remedy to challenge an officer's failure to complete the required training. The defendant may impeach the officer at trial with his failure to complete the training, as occurred here. While the officer's lack of training to perform a field sobriety test may not render his testimony inadmissible, it clearly bears on the weight of his testimony. See *Commonwealth* v. *Shea*, 356 Mass. 358, 361 (1969) (denying motion to strike officer's testimony after evidence of his lack of knowledge and skill in administering breathalyzer tests was demonstrated on cross-examination).

Where an individual is harmed by inappropriate, inadequate or negligent training of police officers, the appropriate remedy lies in a direct suit against either the supervising authority or the municipality under the Massachusetts Tort Claims Act, see, e.g., *Dobos* v. *Driscoll*, 404 Mass. 634, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989), or pursuant to 42 U.S.C. § 1983 (1994). See *Canton* v. *Harris*, 489 U.S. 378 (1989) (determining that inadequacy of training may serve as basis of § 1983 liability where failure to train amounts to "deliberate indifference" to constitutional rights of person with whom police may come into contact).

We vacate the judge's order. The jury's verdict is reinstated, and the case is remanded to the District Court for sentencing.

*So ordered.*